UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KATHLEEN M. WILSON                                              CIVIL ACTION

VERSUS

FARLEY CENTER AT                                                NO. 22-00114-BAJ-RLB
WILLIAMSBURG, ET AL.

### RULING AND ORDER

Before the Court is CIGNA Insurance Company's (CIGNA) Sealed Rule 52 Motion for Judgment on the Administrative Record (Doc. 60) and Defendant The Farley Center's (Farley Center) Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 61). Plaintiff opposes the Renewed Motion to Dismiss (Doc. 68).

### I.   BACKGROUND

As set forth in the Court's prior Order (Doc. 47), this dispute arises out of two causes of action: bed bugs and billing. Plaintiff Kathleen M. Wilson is a Louisiana-domiciled attorney who participated in a drug and alcohol treatment program at the Farley Center in Williamsburg, Virginia. She alleges that on July 26, 2021, during her first stay at the Farley Center, she was "bitten furiously by a bed bug infestation . . . and suffered severe side effects because of being eaten by bed bugs." (Doc. 9, ¶ 18). Additionally, Plaintiff contends that she was improperly billed for treatment. (Doc. 9, ¶¶ 17, 20–22).

Plaintiff initiated this action on February 15, 2022, (Doc. 1). On March 24, 2022, Plaintiff amended her complaint. (Doc. 9). On July 8, 2022, the Farley Center filed its first Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 47), seeking

dismissal of Plaintiff's claims solely on the basis that Plaintiff has failed to allege facts establishing personal jurisdiction over the Farley Center, a Virginia corporation. In support, the Farley Center submitted several accompanying affidavits from several of its employees. (Docs. 17-2, 17-3. 17-4). Plaintiff opposed the Farley Center's Motion (Doc. 38), and on December 20, 2022, the Court issued a ruling denying the Motion and permitting the Plaintiff to engage in limited jurisdictional discovery (Doc. 47). Now before the Court is the Farley Center's Renewed Motion to Dismiss (Doc. 67), which the Plaintiff opposes. (Doc. 68).

In the prior Ruling (Doc. 47), the Court agreed that Plaintiff's original Complaint failed to set forth "sufficient minimum contacts" to establish the Court's personal jurisdiction over the Farley Center. However, the Court permitted limited jurisdictional discovery to determine whether the requisite contacts with Louisiana might yet exist based on email communications between the parties and JLAP (The Louisiana Bar Association Judges and Lawyers Assistance Program). The Court explained:

> Nonetheless, the Farley Center's own affidavits suggest that there is more to the story than what appears in Plaintiff's Complaint, including additional facts suggesting the possibility that personal jurisdiction may yet be satisfied. First, [Farley Center's Director of Business Development, Garry B.] Spain *admits* in his affidavit that the Farley Center is included on JLAP's list of approved treatment providers. (Doc. 17-3, ¶ 5). Experience and common sense suggest that such an arrangement is not the result of mere happenstance. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) ("[W]hether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense."). At minimum, the circumstances of the Farley Center's inclusion on the JLAP list deserves evidentiary development to determine whether and to what extent the Farley Center solicited its position on JLAP's list. Additionally, Spain states in his

affidavit that on July 26, 2021, he sent "an introduction e-mail to Louisiana JLAP." (Doc. 17-3, ¶ 4).

(Doc. 47 at p. 7).

Jurisdictional discovery is now closed, and the Farley Center has submitted its answers to Plaintiff's interrogatories and request for production of documents. (Doc. 63, "Discovery Responses"). Most relevant here, Defendant's Discovery Responses add the following context to the allegations set forth in Plaintiff's prior pleadings:

> On July 26, 2021 Spain . . . sent an introductory e-mail to Jessica Duplantis at Louisiana JLAP, "thank[ing] [her] for [the] recent referral of [Kathleen Wilson] . . . " and offering to "chat with [her] about [Farley's] program . . . ", however, this e-mail was never opened. At that time, Mr. Spain had merely assumed that Louisiana JLAP had referred Kathleen Wilson to Farley. Subsequently, Teresa R. Taylor, Farley's Director of Quality, Compliance and Risk, reviewed Farley's computerized patient records system and concluded that Ms. Wilson had not been referred to Farley by Louisiana JLAP.

(Doc. 63-2 at p. 2).

## II. DISCUSSION

The Court has already set forth the jurisdictional standard and relevant legal analysis in its December 12, 2022 Order determining that Plaintiff's prior allegations failed to establish personal jurisdiction over Farley. (*See* Doc. 47). Rather than repeat itself, the Court incorporates those portions of its December 12th Order by reference here.

Suffice it to say that this Court would not otherwise acquire general jurisdiction over the Farley Center, a Virginia corporation with no specifically alleged systematic ties to Louisiana unless, *inter alia*, the Farley Center takes affirmative steps to do business with Louisiana persons or entities.

3

As noted in the Court's prior Order, a federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the U.S. Constitution. *Revell*, 317 F.3d at 469. At this stage, the Court's focus is solely on whether the exercise of its jurisdiction over the Farley Center would offend federal due process. *See Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. R.S. § 13:3201(B)).

> The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) "that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" Sufficient minimum contacts will give rise to either specific or general jurisdiction. "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" Specific jurisdiction arises when the defendant's contacts with the forum "arise from, or are directly related to, the cause of action."

*Revell*, 317 F.3d at 470 (footnotes omitted).

It appears once again, that this Court lacks specific jurisdiction over the Farley Center because even after jurisdictional discovery, the actual content of the e-mail messages between JLAP and the Farley Center fails to show the requisite contact that would otherwise support jurisdiction.

In a futile attempt to argue otherwise, Plaintiff points to e-mail messages provided by the Farley Center showing that Spain thanked Duplantis for the referral and offered to discuss Farley's program. However, in contrast to Plaintiff's assertions

4

that the Farley Center solicited her business, the Discovery Responses prove the opposite. The Farley Center's records show that Plaintiff was not referred to the Farley Center by Louisiana JLAP. (*See* Doc. 61-2 at p. 2). (where "Taylor, Farley's [Center] Director of Quality, Compliance and Risk, reviewed [its] computerized patient records system and concluded that [Plaintiff] had not been referred to Farley by Louisiana JLAP.").

Nevertheless, courts have repeatedly held that even a "single communication"—necessarily including a single e-mail message—*may* confer specific jurisdiction over a foreign defendant, provided that the *foreign defendant* directs the communication "into the forum," *and* the "'actual content' of that communication gives rise to an intentional tort." *Blackmon v. Bracken Constr. Co., Inc.*, No. 18-cv-00142-BAJ-RLB, 2018 WL 4100684, at *2 (M.D. La. Aug. 28, 2018) (discussing authorities); *cf. Georgia Mobile Dental, LLC v. Napper*, No. 18-cv-269, 2018 WL 6037527, at *6 (M.D. La. Nov. 16, 2018) (Dick, C.J.).

But this is not the case here. Plaintiff's alleged injuries by bed bugs and her payment dispute with the Farley Center are not the "actual content" of the e-mail messages sent by Spain. The subject of the e-mail message from Spain to Duplantis sent on July 26, 2021, was to thank Duplantis for the referral of Plaintiff to the Farley Center. (*See* Doc. 70-5 at p. 1). The other two e-mail messages were sent on April 15, 2022. Those messages show that Spain inquired as to whether the Farley Center was listed as one of JLAP's treatment providers. (*See Id.* at p. 2). The other message was from Spain to Jennifer Gros, (an employee of Louisiana JLAP) seeking the assistance

of someone at JLAP to determine whether the Farley Center was a treatment provider. (*Id.* at p. 3). Clearly, none of the e-mail messages pertained to bed bugs or payment disputes.

Moreover, Defendants assert that of the three emails Plaintiff attached, "none of [the] e-mail [messages] were sent to Louisiana JLAP *before* Plaintiff was admitted for treatment at Farley on July 12, 2021." (Doc. 61-1 at p. 14). On the contrary, "Mr. Spain sent two of them *after* this lawsuit was filed to find out if Farley was listed as one of Louisiana JLAP-approved treatment centers." (*Id.*) (emphasis in the original).

As such, the Court cannot conclude that the e-mail messages provide specific jurisdiction over the Farley Center because the actual content of the e-mail messages did not give rise to Plaintiff's causes of action.

Plaintiff asserts that the Farley Center availed itself to personal jurisdiction because it was listed on JLAP's referral list. However, the Farley Center maintains that it did not solicit Plaintiff because the Farley Center did not place itself on JLAP's referral list. Even further, the Farley Center contends that it was unaware of its presence on JLAP's referral list.

In its Discovery Responses, the Farley Center represented that despite diligent efforts, it could not locate any text messages, e-mail messages, contracts or billing documentation regarding the Plaintiff's referral in 2019. (Doc. 63-1 at p. 1-2). The Farley Center asserts that all other communication with Plaintiff was incidental to her treatment and not intended to serve as a solicitation or marketing effort. (Doc. 61.1 at p. 2). Considering the Discovery Responses, the Court cannot conclude that

the communication between Plaintiff, the Farley Center, and JLAP shows that the Farley Center solicited a position on JLAP's referral list.

Plaintiff also asserts that the multiple payments she made, including the wire transfer from her bank to the Farley Center, should establish personal jurisdiction. The Fifth Circuit has held otherwise. *See Patterson v. Dietze, Inc.* 764 F.2d 1145, 1147 (5th Cir. 1985) (establishing that "given that the material performance occurred in Oklahoma, the fact that Harvey mailed payments to Texas does not weigh heavily in our determination."); *Accord Hydrokinetics, Inc. v. Alaska Mech., Inc.,* 700 F.2d 1026, 7029 (5th Cir. 1983) (finding that the Court does not "weigh heavily the mailing of payment checks into the forum."). Thus, Plaintiff's claim that her financial transactions made to the Farley Center confers personal jurisdiction fails.

Lastly, Plaintiff's assertion that the telephone conference with the Farley Center and JLAP employees to discuss her treatment is sufficient to establish personal jurisdiction is also misplaced. In *Patterson* 764 F.2d 1147, the Fifth Circuit considered whether the mere participation in telephone calls were sufficient to convey personal jurisdiction. There, the Court found that such actions were insufficient to support specific jurisdiction because all "material performance occurred in Mexico." (*Id.*).

Similarly, all material performance in this case occurred in Virginia. Plaintiff was allegedly bitten by bed bugs in Virginia and billing disputes stem from her treatment there. Because all performance occurred in Virginia, the communication between the Parties and payments made by Plaintiff to the Farley Center are not

7

sufficient to support jurisdiction.

The question (again) is "what next." Dismissal without prejudice is an option. But so, too, is transfer to the Eastern District of Virginia under 28 U.S.C. § 1631. *See Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 794 (5th Cir. 2021) ("[Section] § 1631 was intended to embrace transfers performed in the absence of not just subject matter jurisdiction, but personal jurisdiction as well."). Significantly, neither Party has requested a transfer.

"A case is 'transferable' pursuant to § 1631 when three conditions are met: (1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Arias v. Mercedes-Benz USA, LLC*, No. 20-cv-00546, 2021 WL 1206600, at *5 (M.D. La. Mar. 30, 2021) (Jackson, J.) (citing authorities).

There is no dispute that this action could have been brought in the Eastern District of Virginia. The Court has now determined that it lacks personal jurisdiction over the Farley Center, and that transfer, not dismissal, best serves to promote judicial efficiency, conserve the Parties' resources, and avoid duplication of efforts. Thus, the elements of the test for transferability under § 1631 are satisfied. *See id.*

### III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the Clerk of Court shall **TRANSFER** this action to the U.S. District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1631.

**IT IS FURTHER ORDERED** that all pending motions, be and are hereby **DEFERRED** to the Transferee Court.

Baton Rouge, Louisiana, this 15th day of February, 2024

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

9